**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

-------------------------------------------------------------X

Terrence Fitch

Case No **23-CV-82**

Plaintiff,

**JURY TRIAL**
**DEMANDED**

- against –
THE STATE OF WISCONSIN
and
Joseph Lacroix, Tonya Rosales
severally, jointly and in their individual capacities as
State Actors Under to Color of State law

**NANCY JOSEPH**
**U.S. MAGISTRATE JUDGE**

Defendants

-------------------------------------------------------------X

Plaintiff, Terrence Fitch as and for his Complaint against Defendants for denial of civil

and legal rights under the color of state law, alleges as follows:

1. This is a civil rights action brought by Plaintiff to seek relief for the Defendants' acts in

    violation of his rights secured by Civil Rights Act of and 1871, 42 U.S.C. §1983, 1985, 1986,

    1988 and the rights secured by the First, Fourth, Fifth, Sixth, Seventh and Fourteenth

    Amendments of the United States Constitution and the rights secured under the Constitution of

    the State of WISCONSIN, malicious prosecution, the common law and the anti-discrimination

    statues of the State of WISCONSIN.

2. Plaintiff seeks compensatory and punitive damages arising from the actions of the Defendants

    to discriminate against him as a loving father pursuant to 42 U.S.C. 1983.

3. Plaintiff seeks damages and monetary relief from the STATE OF WISCONSIN, (hereinafter,

    "STATE") and Defendants named in the above caption, jointly, severally, officially and

    individually, for illegal acts that have been committed under color of law, for the purposes of

1

depriving Plaintiff of basic civil rights secured by the Constitution of the United States and the anti-discrimination statues and laws of the Constitution of the STATE.

4.  Plaintiff found himself facing imminent threats of false accusation and arrest by Sheriffs.

5.  As result of the Defendants' ensuing threats and allowing the admission of falsified court papers into evidence and fabricated incidents, Plaintiff seeks constitutional protection and monetary relief from Defendants.

6.  As a direct and proximate result of Defendants' policies, practice and /or custom within the courtroom of the WISCONSIN Court rooms, hundreds of innocent Black and Hispanic fathers, including Plaintiff, have been subjected to unconstitutional false arrests and financial punishment.

7.  Rooker-Feldman is not a jurisdictional giant. It is a limited doctrine that applies only when litigants try to appeal state court losses in the lower federal courts. Rooker-Feldman does not apply to the claims herein matter. See, Behr vs James Campbell, Palm Beach County School District, United States Court of Appeals No.18-12842 (11th Circuit).

8.  Plaintiff has his civil rights under the Tenth Amendment to not enter into a treaty.

## INTRODUCTION

9.  "Pro se" complaint seeking to recover damages for claimed physical injuries and deprivation of rights in imposing disciplinary confinement should not have been dismissed without affording him the opportunity to present evidence on his claims. See, Haines v Kerner, Certiorari To The United States Court of Appeals For The Seventh Circuit,, No. 70-5025. Decided January 13, 1972.

10. Thus, in the interest of judicial economy and in light of the investment of resources of the parties here, the court will consider whether Plaintiff's complaint can be construed as an inartful attempt to assert plausible federal claims through §1983 of violation of federal constitutional rights to due process and equal protection under the Fourteenth Amendment.Several and repeated civil rights violations were committed by State Actors (individually and collectively) in the caption above under the color of state law.

11. Even where the Plaintiff did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives **ANY**. See, White v. Nix, 43 F.3d 374 (8th Cir.1994) (quoting Lewis v. United States Farmers Home Admin., 992 F.2d 767, 771 (8th Cir. 1993)).

12. However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." See, Pioneer Hi-Bred, 35 F.3d at 1242.

13. Thus, in the interest of judicial economy and in light of the investment of resources of the parties here, the court will consider whether Plaintiff's complaint can be construed as an inartful attempt to assert plausible federal claims through §1983 of violation of federal constitutional rights to due process and equal protection under the Fourteenth Amendment. . See, Carol A. MUMMELTHIE, Plaintiff vs. CITY OF MASON CITY, IOWA, and Alberta Carlene Davis, Defendants; No. C 93-3030; United States District Court, N.D. Iowa, Central Division; January 9, 1995;873 F. Supp. 1293.

14. This case arises out of the excessive use of force used in detaining the Plaintiff at the and false arrest at Hamilton County Court House, Court Room, 3C Title IVD, 2x . And Hamilton County Superior Court Room ,1x

15. Settled Matter of the Court - Child Support Tribunal Is Not an Article III Court.

The Child Support Enforcement Department (CSED) process is a simulated judicial construct to fool the public into thinking that the program is a real judicial process.

The District Court contends that the statutes in question violate the separation of powers doctrine of the Montana Constitution by giving CSED "judicial power" which is expressly reserved to the judiciary by the constitution. The District Court argues that because "judicial power" includes the authority to make binding orders and to carry them into effect, CSED's statutory authority to modify a child support order, file it with the district court, and then enforce the order as a district court judgment, violates the constitution. See, SEUBERT v. Montana , Supreme Court of Montana, No. 98-324.Decided: August 31, 2000.


Child Support Title IV-D Program

16. The Child Support Enforcement (CSE) program was enacted into law on January 4, 1975 (P.L. 93-647). When the program was first established, its goals were to reimburse the states and the federal government for the welfare payments they provided families, and to help other families remain self-sufficient and stay off welfare by obtaining consistent and ongoing child support payments from the noncustodial parent. Over time, the CSE program has evolved from a "welfare cost-recovery" program into a "family-first" program that seeks to enhance the well-being of families by making child support a more reliable source of income.

4

17. In FY2019, the CSE program collected $5.06 for every $1 it spent, and made collections for 63% of its caseload (versus 23% in FY1998, when the 1996 welfare reforms were just being implemented). Those cases with collections were 69% of the never-TANF (Temporary Assistance for Needy Families) caseload, 62% of the former-TANF caseload, and 35% of the current-TANF caseload.

18. On or around July 2015, The STATE of WISCONSIN introduced foreign laws and regulations into the domestic family courts. The rules are known as the Uniform Interstate Family Support Act. See image below.

## State of Wisconsin



**2009 Senate Bill 473**

Date of enactment: **May 12, 2010**
Date of publication*: **May 26, 2010**

# 2009 WISCONSIN ACT 321

AN ACT *to repeal* 769.101 (7), 769.101 (19) (b), 769.301 (2) and 769.612 (2); *to renumber* 769.102, 769.103 and 769.308; *to renumber and amend* 769.201, 769.207 (3), 769.307 (3), 769.319 and 769.604 (1); *to consolidate, renumber and amend* 769.101 (19) (intro.) and (a); *to amend* 767.01 (2), 767.80 (5m), 769.101 (2), 769.101 (4), 769.101 (8), 769.101 (9), 769.101 (10), 769.101 (12) (a), 769.101 (12) (b), 769.101 (14), 769.101 (15), 769.101 (16), 769.101 (17), 769.101 (20) (intro.), 769.101 (20) (a), 769.101 (20) (b), 769.101 (20) (c), 769.101 (20) (d), 769.101 (21), 769.101 (22), 769.203, 769.204 (title), 769.204 (1) (intro.), 769.204 (1) (a), 769.204 (1) (b), 769.204 (2) (intro.), 769.204 (2) (a), 769.204 (2) (c), 769.207 (title), 769.207 (1m) (intro.), 769.207 (1m) (a), 769.207 (1m) (b), 769.207 (1m) (c), 769.207 (1r), 769.207 (2), 769.208, 769.209, 769.301 (3), 769.302, 769.304 (1), 769.304 (2), 769.305 (1), 769.305 (2) (intro.), 769.305 (2) (a), 769.305 (2) (b), 769.305 (2) (h), 769.306, 769.307 (2) (intro.), 769.307 (2) (a),

Direct Federal Funding to Create Independent Contractors Relationships

19. The Federal government provides direct funding to the judges, staff and clerks of the Courts of Administration and as a direct result, defendants are compensated as either federal employees or independent contractors - the involvement with state actors are coincidental.

20. Based on the illustration below, the Defendant sheriffs are acting as independent contractors and the agreement code is Contract #_CSS93.

## State **Wisconsin**

### SECTION 1 SINGLE STATE AGENCY ORGANIZATION

| Citation | |
|---|---|
| | 1.1 **State agency Designation, Authority, Organization and Staffing** |
| §454(3) of the Social Security Act (the Act); 45 CFR 302.12 | The **Department of Children and Families** <br> (Name of single and separate IV-D agency) <br><br> certifies as follows: |

1. That it is the single and separate organizational unit designated to administer the program under this plan.

2. That it is:

   ☑ Located in the single State agency designated under 45 CFR 205.100 to administer Title IV-A of the Act.

## STANDARD COOPERATIVE AGREEMENT

THIS AGREEMENT is entered into between the _____JUNEAU_____ (Name of County) County Board of Supervisors or the Child Support Agency (CSA) designated by the county board under Wis. Stat. § 59.53(5), and the __JUNEAU COUNTY SHERIFF DEPARTMENT__, (Cooperative Agency).

This agreement is required by the State/Agency Contract for Child Support and is intended to provide support for the Child Support Agency in carrying out the functions of the IV-D program under Wis. Stats. §§ 49.22 and 59.53(5) and section 454(33) of the Federal Social Security Act related to establishing paternity, establishing and enforcing support obligations, collecting and distributing support payments, establishing and enforcing medical support obligations, locating absent parents, and reporting. State and federal reimbursement of allowable administrative costs incurred by the Cooperative Agency is provided through this agreement.

**H. Assignments and Subcontracts**

1. To neither assign the responsibility for this contract to another party nor subcontract for any of the work contemplated under this contract without prior written approval of the Department which shall not be unreasonably withheld. Any sublicense, assignment, or transfer otherwise occurring without prior approval of the Department shall be null and void.

2. To be responsible for all work performed and for all products produced pursuant to this contract whether actually furnished by the contractor or its subcontractors. Any subcontracts shall be evidenced by a written document. The contractor further agrees that the Department shall not be liable to the subcontractor in any way or for any reason. The contractor, at its expense, will defend the Department against such claims.

3. To make payments to any subcontractor within seven (7) working days after receipt of full or partial payments from the Department in accordance with s. 287.0585, F.S., unless otherwise stated in the contract between the contractor and subcontractor. Failure to pay within seven (7) working days will result in a penalty that shall be charged against the contractor and paid to the subcontractor in the amount of one-half of one percent (.005) of the amount due per day from

## JURISDICTION

21. Jurisdiction is conferred upon this Court by 28 U.S. C. §1331, 1343, this being an action

    seeking redress for the violation of Plaintiff's constitutional and civil rights.

22. Plaintiff further invokes this Court's supplemental jurisdiction to adjudicate over any and all

    state constitutional and state law claims pursuant to 28 U.S.C. §1367(a) that are so related

    to claims within the jurisdiction of this Court that they form part of the same case or

    controversy.

7

23. Pursuant to laws of the STATE of WISCONSIN and in connection with the acts and

    conduct alleged in this Complaint, Defendants, directly and/or indirectly, used the judicial

    power of the court 's process to arrest, detain and confined Plaintiff against his objections

## VENUE

24. Venue is proper in the United States District Court for the Eastern District of WISCONSIN

    pursuant to 28 U.S.C. §1391(b) and (c) because the Defendants resides in the district and the

    events giving rise to this claim occurred within the boundaries of the Eastern District of

    WISCONSIN.

25. The events giving rise to this claim occurred within the boundaries of the courtroom within

    the STATE of WISCONSIN.

26. This Court is authorized to grant Plaintiff's relief in addition to court costs, including and

    not limited to reasonable attorney's fee, under 42 U.S.C. §1988.

27. Supplemental jurisdiction is vested in this Court pursuant to 28 U.S.C. §1367 because it

    involves the same case or controversy as the claims identified in the paragraph above, and

    relies substantially on the same nucleus of operative fact.

## JURY TRIAL DEMAND

28. Plaintiff demands a jury trial in this action on each and every one of his claims as pleaded

    herein.

## THE PARTIES

29. Plaintiff in ***Propria Personam*** Terrence Fitch (hereinafter "Plaintiff"), is citizen of the territory of the State of WISCONSIN and, at all times relevant hereto, is a resident of and a resident of WISCONSIN.

30. Defendant Joseph Lacroix (hereinafter "Lacroix") was at all times relevant herein, acting under color of state law as a Milwaukee County Police Officer, employee and agent of Milwaukee County.

31. Defendant Tonya Rosales (hereinafter "Rosales") was at all times relevant herein, acting under color of state law as a Milwaukee County Police Officer, employee and agent of Milwaukee County.

32. Upon Information and belief, all Defendants are being sued in their individual capacity, and not in their official capacity. All Defendants activities with the Title IV-D program are compensated directly by the Federal government.

33. Upon information and belief, all Defendants were the proximate cause of Plaintiff's physical, psychological and emotional injuries.

## FACTUAL AND GENERAL ALLEGATIONS

34. All of the events described herein occurred sometime in the month of February in the year 2021.

35. On/around February 18th 2021, around 3:30pm Plaintiff contacted Milwaukee County non-emergency helpline by phone for assistance.

36. Plaintiff was transferred to an officer who came to aid Plaintiff at 1570 North Prospect Ave Milwaukee WI 53202.

9

37. An officer arrived at the location and provided reasonable assistance and contact information to the Plaintiff. Officer then left the location and the plaintiff went home to the Plaintiff family.

38. Incident - On/around February 23rd 2021 around 3:30pm at 1570 North Prospect Ave Milwaukee WI 53202.

39. Lacroix's actions violated Plaintiff 4th, 5th, 6th, 7th, 8th and 14th amendment rights.

40. Rosale's actions violated Plaintiff 4th, 5th, 6th, 7th, 8th and 14th amendment rights.

41. On/around February 23rd 2021 3:30pm Plaintiff contacted the non-emergency helpline for assistance.

42. Plaintiff was transferred to Lacroix and Rosales, Plaintiff then stated he needed help with retrieving his child from the other parent.

43. Lacroix and Rosales arrived at 1570 North Prospect Ave Milwaukee WI 53202 where Plaintiff was located at approximately 4:00 pm.

44. Plaintiff anticipated Lacroix and Rosales would aid and help Plaintiff in retrieving his child, Lacroix and Rosales did not assist Plaintiff with aid or help with retrieving his child.

45. Plaintiff anticipated spending quality time with his child and family.

46. Instead, Lacroix and Rosales surrounded Plaintiff.

47. Plaintiff noticed Lacroix standing in an intimidating manner with his hand near his gun.

48. Plaintiff was standing calm in a non threatening manner.

49. Lacroix and Rosales appeared to be angry with Plaintiff, regarding Plaintiff needing assistance in retrieving his child.

50. Then Lacroix stated to Plaintiff he was under arrest.

51. Plaintiff, in shock, asked Lacroix "Why" he was under arrest.

52. Lacroix did not answer.

53. Plaintiff was intentionally grabbed in a rude aggressive manner by his arm and both arms were forced behind his back then placed in handcuffs, by Lacroix.

54. Plaintiff was unable to leave at his will and was detained by Lacroix and Rosales.

55. Lacroix placed handcuffs very tightly around Plaintiff wrist, which caused Plaintiff wrist pain and problems.

56. Plaintiff stated to Lacroix the handcuffs were tight around his wrist.

57. Lacroix did not adjust the handcuffs.

58. Plaintiff now suffers from lasting pain and numbness expected to last the rest of his life.

59. Plaintiff disagreed with Lacroix and Rosales actions and conduct against him, but Plaintiff did not resist because of fear of retaliatory charges, excessive force, death or all.

60. Plaintiff asked Lacroix and Rosales to provide Plaintiff documentation for the arrest.

61. Lacroix and Rosales did not present any documentation to Plaintiff for the arrest.

62. Lacroix verbally stated he did not have a copy of a warrant.

63. A warrant in the Police computer system and conducted within the Milwaukee Police Force.

64. Plaintiff informed Lacroix and Rosales that it is unconstitutional to arrest a citizen without probable cause or without an arrest warrant from a judge.

65. Lacroix and Rosales did not acknowledge Plaintiff requests and proceeded to arrest Plaintiff.

1. I state as follows:   ☐ a. I am the arresting officer in this case.   **OR**

                 ☐ b. I am a law enforcement officer and make this statement on information and belief.

2. The above-named person was arrested without a warrant on   **2/23/2021**    at   **4:33:00 PM**

66. Plaintiff disagreed with Lacroix and Rosales actions against him, but Plaintiff did not resist because of fear of retaliatory charges, excessive force, death or all.

67. Thereafter Plaintiff was still in tight handcuffs which continued to cause pain in wrist as time lapsed.

68. Plaintiff was then searched about his persons by Rosales without his consent, Rosales informed Plaintiff he was being taken into their custody. [1]

69. Plaintiff did not sign a consent waiver form, with Lacroix or Rosales for the arrest.

70. Plaintiff was forced into the back seat of the patrol vehicle by Lacroix.

71. Plaintiff was then conveyed against his will, by Rosales and Lacroix.

72. While Plaintiff was being conveyed in the patrol vehicle, Lacroix made a comment "he was in shock I had never been arrested". Upon information and belief Lacroix could not believe that an African American man had not been arrested before in the city of Milwaukee.

73. Plaintiff was isolated from society and separated from friends and family, since no documents for arrest were presented by Lacroix or Rosales to Plaintiff. Plaintiff feared about where he would be taken and what would be done to him.

---

[1] Whoever does any of the following is guilty of a Class C felony: By force or threat of imminent force seizes or confines another without his or her consent and with intent to cause him or her to be secretly confined or imprisoned or to be carried out of this state or to be held to service against his or her will; 940.31(1)b

74. While inside the patrol vehicle, Plaintiff stated to Lacroix and Rosales it is unconstitutional to arrest without a warrant.

75. Lacroix and Rosales did not provide Plaintiff with freedom, instead Lacroix and Rosales continued the arrest against Plaintiff despite not presenting arrest documents and without Plaintiff consent.

76. Plaintiff was literally [1] kidnapped.

77. Lacroix and Rosales actions and conduct against Plaintiff have caused Plaintiff anxiety, mental anguish, sleepless nights, fear of police officers and violation of his constitutional rights.

78. Thereafter Plaintiff arrived at a Milwaukee Police Department.

79. Plaintiff was forced in fear and duress to provide his fingerprints which were entered in a Milwaukee Police Department computer system by Police Staff.

80. Plaintiff did not resist in fear of retaliatory charges.

81. On or around February 23rd 2021 in the middle of the night, at some point prior to being transferred from a Milwaukee Police Department to a Milwaukee County Jail;

82. Plaintiff was forced in fear and duress to sign signature pads and remove personal items such as his personal clothing which were damaged at this Milwaukee Police Department.

83. Plaintiff personal clothing was damaged as a result of Milwaukee Police Staff members forcing Plaintiff to remove parts of his clothing.

84. Plaintiff did not agree with any of the actions taken against him by Police staff but he did not resist because of the fear of death.

85. Plaintiff was photographed under fear and duress by Police Staff at the Milwaukee Police Department.

86. Plaintiff was later transported from the Milwaukee Police Department to a Milwaukee County Jail and placed in tight handcuffs for a second time.

87. Plaintiff was then forced by Milwaukee County Jail staff to wear a dirty and disgusting orange jail outfit.

88. Plaintiff spent 24 hours in jail without food or freedom which has caused Plaintiff anxiety, mental anguish, claustrophobia and fear of police officers.

89. Plaintiff was released the following day without a copy of any arrest documents, criminal charges or court date.

90. Plaintiff had no idea what to expect or when he would see his child.

91. Plaintiff still needed assistance in retrieving his child from the other parent.

92. Plaintiff was scared to contact the non-emergency line for help because of fear of being arrested by Lacroix and Rosales a second time.

93. As a direct result of Lacroix and Rosales arresting Plaintiff without providing Plaintiff any supporting arrest documentation. Plaintiff was isolated from society and separated from friends and family (his child) which has caused Plaintiff to suffer traumatic stress, mental anguish, claustrophobia, fear of law enforcement, anxiety, sleepless nights and violations of his constitutional rights.

94. Incident - On/around February 24th 2021, Plaintiff was released from a Milwaukee County Jail 24 hours from the original arrest date.

95. Plaintiff family and friends notified Plaintiff there were booking photos and information visible on the internet from the arrest of Plaintiff.

96. As a direct result of the information being public this has caused Plaintiff traumatic stress, anxiety, emotional stress including humiliation, embarrassment, sleepless nights and violation of his constitutional rights.

97. Lacroix's actions violated Plaintiff 4th, 5th, 6th, , 7th , 8th and 14th amendment rights.

98. Rosale's actions violated Plaintiff 4th, 5th, 6th, 7th, 8th and 14th amendment rights.

99. On or around February through September of 2021, Plaintiff contacted the Milwaukee County Police Open Records and Milwaukee County Sheriff Department Records several times via certified mail, fax and email.

100. Plaintiff requested arrest information and all unaltered audio/video footage pertaining to the arrest of Plaintiff.

101. Upon information and belief Lacroix and Rosales were equipped with an audio body camera during the arrest.

102. Plaintiff has yet to receive unaltered audio/video cam footage for Lacroix and Rosales.

103. All of the events described herein occurred sometime in the month of April and in the year 2021 and beyond.

104. Incident - On April 1st 2021,

105. Lacroix's actions violated Plaintiff 4th, 5th, 6th, , 7th , 8th and 14th amendment rights.

106. Rosale's actions violated Plaintiff 4th, 5th, 6th, 7th, 8th and 14th amendment rights.

107. On/around the month of April in the year 2021 Plaintiff applied for a job at Associated Bank, pending background check for hire.

108. Associated Bank conducted a fingerprint and background check on Plaintiff, subsequently the results and records displayed an arrest on February 23rd 2021.

109. The hiring process was delayed until Plaintiff could provide proof that he was innocent and there were no charges or conviction against Plaintiff from the arrest.

110. As a direct result of the delay caused by the arrest. Plaintiff was unable to start employment on time as a result, which caused Plaintiff to suffer loss of income and wages.

111. Plaintiff contacted the Milwaukee County District Attorney Office for information regarding the arrest.

112. The Milwaukee District attorney's office was able to provide Plaintiff with some relief.

113. In the year 2021 Plaintiff sent Lacroix and Rosales several affidavits and notices regarding his position, intent and status.

114. Plaintiff has not received any response from Lacroix or Rosales regarding Plaintiff affidavits, position and notice thus far.

115. Plaintiff has not received a court hearing or trial by jury from a Judicial Officer to adjudicate the February 23rd 2021 arrest or any other allegations made by Lacroix and Rosales.

116. Neither Lacroix or Rosales have filed any criminal charges against the Plaintiff thus far.

117. On or around January 5th 2023 Plaintiff sent another request for information regarding 2021 arrest to the Milwaukee Police Open records.

118. As a result of the arrest and all the incidents described above Plaintiff now suffers from anxiety, emotional stress, claustrophobia, sleepless nights, traumatic stress, fear of law

enforcement, mental anguish and deprivation of his constitutional rights as a result of the defendant(s) Lacroix and Rosales actions complain on, on said dates.

119.    Lacroix and Rosales at all times herein acted under color of state law negligently, gratuitously, willfully, intentionally and beyond their authority with the intent to injure Plaintiff.

## DAMAGES

120.    As a direct and proximate result of the acts, described herein, of the all Defendants, Plaintiff suffered the following injuries and damages:

   (a) Violation of his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States; Malicious Prosecution

   (b) Violation of the established civil rights laws for the STATE of WISCONSIN;

   (c) Loss of physical liberty and freedom;

   (d) Life threatening pain and suffering, anxiety, claustrophobia, extreme fear, emotional trauma, requiring the expenditure of money for treatment expected to last the rest of his life;

   (e) Economic damages including loss of income, job opportunities, career advancement, loss wages; and

   (f) Humiliation, embarrassment, and injury of reputation.

## CAUSES OF ACTION
## COUNT I
### Lacroix and Rosales were responsible for (Fourth Amendment Violations)

121.    Plaintiff repeats and realleges and incorporates by reference paragraphs 1-121, with the same force and effect as though fully set forth herein.

122.    The Supreme Court held that an individual's claim that challenges pretrial detention falls within the scope of the Fourth Amendment regardless of whether legal process has begun. Even where legal process has begun, the prosecution itself may be unsupported by probable cause, which gives rise to a Fourth Amendment claim, **See Manuel v. City of Joliet.**

123.    Plaintiff avers his Fourth Amendment right to be secure in his person against unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution was violated whereby Plaintiff was unlawfully detained. As a direct proximate result of Lacroix and Rosales acts and omissions jointly and severally against Plaintiff, Plaintiff has suffered injuries to his person.

## COUNT II
### Defendants Lacroix and Rosales were responsible for (Article 1 §§ 11 Violation) Wisconsin

124.    Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 123, with the same force and effect as though fully set forth herein.

125.    Plaintiff avers his right to be free from unreasonable seizure or searches as guaranteed by the constitution of the STATE Article I §§ 11 was violated whereby Plaintiff was unlawfully detained. As a direct and proximate result of Lacroix and Rosales acts and omissions jointly and severely against Plaintiff, Plaintiff has suffered injuries to his person.

## COUNT III
### Defendants Lacroix and Rosales were responsible for (Excessive Force)

126. Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 125 with the same force and effect as though fully set forth herein.

127. Defendants Lacroix, Rosales and Police officers unreasonably and/or intentionally committed acts and omissions while acting under the color of state law that violated the plaintiffs rights as guaranteed by the United States Constitution by negligently or intentionally affixing handcuffs unnecessarily tightly and thereby using excessive force to detain him.

128. Plaintiff, at the time Police officers used such force, was not attempting to avoid a lawful seizure, nor did he pose any threat to an officer's safety or the safety of the public.

129. Police officers Lacroix and Rosales thereby violated Plaintiffs right to be free from unreasonable seizures, free from bodily harm, and free from the excessive use of force. See Bastien vs Goddard, 279 F. 3d 10, 14—15 (CAI 2002) (analyzing a claim of excessive force using handcuffs).

130. As a direct and proximate result of Lacroix and Rosales acts and omissions jointly and severally against Plaintiff, Plaintiff has suffered physical and non-physical injuries and pain to his person and mental anguish as a result of Lacroix and Rosales unlawful use of the tight handcuffs.

131. These injuries were not caused by any other means.

## COUNT IV
**Defendants Lacroix and Rosales were responsible for (Failure to Intervene)**

132. Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 131, with the same force and effect as though fully set forth herein.

133.    Defendants, Lacroix and Rosales were aware that Police officers unreasonably and/or intentionally committed acts and omissions while acting under the color of state law that violated Plaintiffs rights as guaranteed by the United States Constitution by unnecessarily applying handcuffs.

134.    Plaintiff, at the time Lacroix and Rosales applied the handcuffs, was not attempting to avoid a lawful seizure, nor did he pose any threat to an officer's safety or the safety of the public.

135.    Lacroix bragged that this he was his normal practice and he knows the constitution.

136.    Rosales did not disagree with Lacroix statements, or attempt to intervene to stop his unlawful conduct.

137.    Defendants Rosales are thereby liable for failing to intervene in Police officers' unconstitutional use of force against plaintiff See Randall v. Prince George 's County. , 302 F.3d 188, 203 (CA4 2002) ("[A] law officer's duty [is] to uphold the law and protect the public from illegal acts, regardless of who commits them.").

138.    As a direct and proximate result of Lacroix and Rosales acts and omissions jointly and severally against Plaintiff, Plaintiff has suffered physical and psychological injuries and pain to his person as a result of Lacroix and Rosales failure to intervene.

### COUNT V
### Defendants Lacroix and Rosales were responsible for (Common Law Assault/Battery) ALL Police officers

139.    Plaintiff repeats and realleges and incorporates by reference paragraphs 1-138, with the same force and effect as though fully set forth herein.

140. The foregoing paragraphs are hereby incorporated by reference as if set forth in full herein.

141. At all relevant times Lacroix and Rosales had a duty to refrain from using excessive force against Plaintiff.

142. Plaintiff avers that Lacroix and Rosales each touched Plaintiff and intended to touch Plaintiff to effectuate his unlawful detention, and, therefore, as a matter of law, committed an assault and battery upon Plaintiff person.

143. Lacroix and Rosales intentionally physically assaulted Plaintiff in an offensive and injurious manner, which itself was excessive force.

144. As a result of the conduct, Plaintiff suffered physical and non-physical injuries.

145. As a direct and proximate result of the Lacroix and Rosales unlawful actions, Plaintiff has suffered damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment to his person.

146. The force Lacroix used was unreasonable, unlawful, wanton, and malicious, and was not necessary to perform his duties, entitling Plaintiff to enhanced compensatory damages.

## COUNT VI
### Defendants Lacroix and Rosales were responsible for 42 U.S.C. § 1983 and Substantive Due Process: Special Relationship and State Created Danger

147. Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 146 with the same force and effect as though fully set forth herein.

148. At all relevant times, Defendants had a special relationship with Plaintiff, in which, imposed upon them an affirmative duty to care for and protect Plaintiff from harm under the First, Fourth, Fifth, Fourteenth Amendment to the United States Constitution.

149. Defendant's Lacroix and Rosales actions and omissions were a substantial departure from the exercise of reasonable professional judgment, practice, standards, and amounted to deliberate indifference to Plaintiff's welfare as a direct and approximate result, Defendants breached that duty.

150. DEFENDANTS Lacroix and Rosales failed to ensure the safety and well-being of Plaintiff while in their custody and jurisdiction and thus approximately causing him substantial and unnecessary physical, emotional and psychological harm.

151. At all relevant times, the acts and omissions of DEFENDANTS Lacroix and Rosales occurred while Plaintiff was present in court during hearings and within the jurisdiction of the Supreme Court.

152. Defendants Lacroix and Rosales affirmatively exercised their authority and power to restrain and detain Plaintiff and as a direct and proximate result, restricted Plaintiff's liberty and rendered him speechless during his confinement with the Milwaukee Police Department.

153. Moreover, because DEFENDANTS policies, practices and/or customs subjected Plaintiff to arrest and confinement and therefore Plaintiff cannot alter his behavior in the courtroom to avoid future violations of his constitutional and civil rights at the hands of DEFENDANTS and the Officers of the Court.

154. As a direct and proximate result, Defendants established a special relationship with Plaintiff due in part to their on-going litigation in District Court and therefore they owed an affirmative duty to protect him.

155. Defendants arbitrarily and capriciously deprived Plaintiff of his due process rights in the absence of any countervailing state interest and as a direct and proximate result, Plaintiff sustained harm and damages described herein.

156. Plaintiff's substantive due process rights were clearly established constitutional rights at the time of Lacroix and Rosales acts and omissions, and a reasonable individual of similar profession would have known that their acts and omissions would violate these clearly established constitutional rights.

## COUNT VII
### Defendants Lacroix and Rosales were responsible for (Intentional Infliction of Emotional Distress
### (STATE and All Defendants)

157. Plaintiff repeats and realleges and incorporates by reference paragraphs 1-156 force and effect as though fully set forth herein.

158. Defendants engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society.

159. Among other conduct, Defendants' repeated false, scurrilous and defamatory statements published in hardcopy and online civil court document filed that the Plaintiff is and/was "engaged in criminal and fraudulent activities" when he knew, or should have known about the falsity of those statements, constitutes extreme and outrageous conduct that exceeds the boundary of decency in a civilized society.

160. DEFENDANTS' defamatory statements of the charge of Contempt are available to the public via the internet and as a direct result, every search for these defamatory statements provide infinite access from now and into the future.

161. By the actions and conduct, Defendants intended to and did intentionally or recklessly cause the Plaintiff to suffer severe emotional and psychological distress.

162. As direct and proximate results of Lacroix and Rosales conduct, Plaintiff has suffered, and continues to suffer, severe emotional and psychological distress, for which he is and/or was entitled to an award of damages.

163. Lacroix and Rosales extreme and outrageous conduct was knowing, malicious, willful and wanton disregard, entitling the Plaintiff to an award of monetary and punitive damages. Defendants.

<h3 style="text-align:center">COUNT VIII</h3>
### Defendants Lacroix and Rosales were responsible for 42 U.S.C. §1983: False Arrest and Imprisonment
### (All Defendants)

164. Plaintiff repeats and realleges and incorporates by reference paragraphs 1-163, with the same force and effect as though fully set forth herein.

165. By their conduct, as described herein, and acting under color of state law to deprive the Plaintiff of his rights to be free from unreasonable searches and seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments, Defendants is liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

166. Details of the incidents are described in above paragraphs.

167. Plaintiff was deprived of his liberty and the subjecting incarceration placed him in the automatic same conditions as convicted felons in an unconstitutional punishment via **Bell v Wolfish 441, US 520 (1979).** Defendants could only be deprived of liberty as a matter of "compelling necessity". No NECESSITY was stated in any manner for this action to take

place without being taken before the Judge who signed off on the warrant for the arrest of Plaintiff.

168. As a direct and proximate result of Lacroix and Rosales unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation, embarrassment and reckless and wanton so as to justify the imposition of punitive damages on the STATE.

## COUNT IV
### Defendants Lacroix and Rosales were responsible for 42 U.S.C. §1985(3) Conspiracy with Racial Animus
### (STATE and DEFENDANTS)

169. Plaintiff repeats and realleges and incorporates by reference paragraphs 1-168, with the same force and effect as though fully set forth herein.

170. The individual Defendants Lacroix and Rosales, under the color of law, conspired with each other to undertake a course of conduct to oppress, threaten, an intimate Plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution of the United States.

171. Defendants Lacroix and Rosales attempted to self create criminal charges unlawfully against Plaintiff because of Plaintiff African American race.

172. The conduct of Defendants was motivated by racial animus and by his/her desire to injure, oppress, threaten and intimidate Plaintiff because of his African-American race.

173. Defendants' racial and ethnic animus was expressed in racially and discriminatory orders directly in the false arrest and detention of Plaintiff which ended with incarceration in the Detention Center.

174. The foregoing acts of Defendants Lacroix and Rosales would not have occurred if Plaintiff was White European-American.

175. As a proximate and direct result of the Defendants Lacroix and Rosales conducts, Plaintiff suffered injuries and damages described above.

## COUNT X
### Defendants Lacroix and Rosales were responsible for 42 U.S.C. §1985(3): To Conspiracy to Hinder Provision of Equal Protection

176. Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 175 with the same force and effect as though fully set forth herein.

177. DEFENDANTS Lacroix and Rosales conspired with Officers of the Court for the purposes of hindering and preventing the constituted authorities of the STATE from securing and providing Plaintiff equal protection of the laws.

178. In furtherance of the conspiracy, and to immediately detain Plaintiff for a period of five (5) hours or longer at the police station, and there comes a time later, to imprison him in the County Jail.

179. As a proximate and direct result of Lacroix and Rosales conducts, Plaintiff suffered the injuries and damages described herein.

## COUNT XI
### Defendants Lacroix and Rosales were responsible for 42 U.S.C §1985(2): Conspiracy to Impede Due Course of Justice

180. Plaintiff repeats and realleges and incorporates by reference paragraphs 1-179 with the same force and effect as though fully set forth herein.

181. DEFENDANTS Lacroix and Rosales conspired, along with Officers of the Court, to impede the due course of justice in Wisconsin State, with the intent to deny Plaintiff the equal protection under the laws.

182. As a proximate and direct result of DEFENDANT's Lacroix and Rosales conducts, Plaintiff suffered the injuries and damages described above.

## COUNT XII
### Defendants Lacroix and Rosales were responsible Pursuant to §1983 (Malicious Prosecution)

183. Plaintiff repeats and realleges and incorporates by reference paragraphs 1-182 with the same force and effect as though fully set forth herein.

184. Defendants Lacroix and Rosales, with malicious intent, arrested Plaintiff and initiated a criminal proceeding despite no evidence that Plaintiff had committed no crime and had no warrant.

185. All charges against Plaintiff were terminated in his favor.

186. That there was no probable cause for the arrest and no criminal proceedings.

187. That by reason of defendants Lacroix and Rosales acts and omissions, defendants, acting under color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff rights, deprived Plaintiff of his liberty when they maliciously prosecuted him and subject him to a company requirement, in violation of his rights pursuant to the Fourth and Fourteenth Amendment of the United States constitution.

188. That upon information and belief, Defendants Lacroix and Rosales had a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause. Thus, as a result of the above policies and customs, Plaintiff was maliciously prosecuted despite the fact that he had committed no violation of the law.

189. The actions of while acting as Executive officers are a complete betrayal of due process to which they are appointed to ensure are afforded to all citizens and non-citizens alike. **Owen v. City of Independence, 445 U.S. 622 (1980)** demonstrates "Officers of the court have no immunity, when violating a Constitutional right, from liability. For they are deemed to know the law." As well as Bunch vs Barnett 376 F.Sup. 23. 1974

190. That by reason of the foregoing, Plaintiff suffered emotional and psychological injuries, traumatic stress, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation and indignity. All of the said injuries may be permanent.

## COUNT XIII

**Lacroix and Rosales were responsible for (Negligent Involvement in Unlawful Arrest)**

191. Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 190 with the same force and effect as though fully set forth herein.

192. Lacroix and Rosales arrested Plaintiff on a hunch and without facts to support a lawful arrest in which a reasonable officer would have known or should have known the arrest of Plaintiff was unlawful.

193. Lacroix and Rosales attempted to selfcreate criminal charges by unlawfully arresting Plaintiff without probable cause or consent.

194. Plaintiff avers that Defendants each possessed actual knowledge that there was no constitutional basis for them to arrest Plaintiff when they arrested Plaintiff, and, therefore, as a matter of law, committed the tort of "negligent involvement in unlawful arrest" upon Plaintiff person. As a direct and proximate result of Lacroix and Rosales acts and omissions jointly and severally against Plaintiff, Plaintiff has suffered injuries to his person.

## COUNT XIV

**Defendants Lacroix and Rosales were responsible (Conspiracy)**

195. Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 194 with the same force and effect as though fully set forth herein.

196. Defendants Lacroix and Rosales jointly prepared and or conspired with one another to prepare false, misleading, and incomplete official reports and to give false incomplete, and misleading version of events to their superiors and to the public.

197. All the Defendants

    a. had an objective to be accomplished;

    b. had an agreement on the object or course of action;

    c. performed one or more unlawful overt acts; and

    d. caused Plaintiff damages that were a direct result of those acts.

198. The Defendants agreed, expressly and/or implicitly through their actions and in violations of their duty, that the object of their course of action was to cover up Lacroix actions and not file accurate reports of all of the details surrounding Plaintiff arrest.

199. The actions of the Defendant Lacroix and Rosales as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations, loss of liberty, emotional distress and other damages as set forth in this Complaint.

200. Defendants Lacroix and Rosales are jointly and severally liable for this conduct.

## COUNT XV
**Defendants Lacroix and Rosales were responsible Unlawful Arrest Pursuant to §1983**

201. Plaintiff repeats and realleges and incorporates by reference paragraphs 1- 200 with the same force and effect as though fully set forth herein.

202. No right is held more sacred, or is more carefully guarded, by clear and unquestionable authority of law. Terry v Ohio, 392 U.S 1, 9 (1968).

203. Defendants Lacroix and Rosales deprived Plaintiff of his constitutionally protected right to be free from unreasonable seizures under the fourth amendment by unlawfully arresting him despite lacking probable cause that any crime had been committed.

204. Defendants Lacroix and Rosales intentionally arrested Plaintiff by restraining him in handcuffs and later confirming him in the back of a police car, without a warrant, without his consent, and without any legal justification.

205. Plaintiff did not consent to his restraint or confinement and was conscious of both.

206. Defendants Lacroix and Rosales willfully arrested Plaintiff by telling Plaintiff he was being arrested and by restraining Plaintiff and later in a patrol vehicle.

207. Defendants Lacroix and Rosales did not have probable cause to support arresting Plaintiff as they did not see Plaintiff commit a crime. Plaintiff was not under arrest at the time he contacted the non-emergency helpline for help retrieving his child.

208. Defendants Lacroix and Rosales did not have authority of law to arrest Plaintiff as they did not have a warrant or probable cause to arrest Plaintiff. and no other exigent circumstances existed justifying his arrest.

209. By knowingly and intentionally arresting Plaintiff without consent, without probable cause, and without legal justification, Defendants Lacroix and Rosales deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

210. As a result of the unlawful arrest, Plaintiff suffered injuries

211. As a result of the unlawful arrest, Defendants Lacroix and Rosales deprived Plaintiff of his civil, constitutional and statutory rights and are liable to Plaintiff pursuant to 42 U.S.C § 1983.

212. Plaintiff was damaged as a result of Defendants Lacroix and Rosales wrongful acts as his liberty was deprived and he suffered the emotional distress and mental anguish from defendants depriving Plaintiff of access to his child.

213. Additionally, when making the unlawful arrest, Defendants Lacroix and Rosales injured Plaintiff wrist, causing him physical pain and suffering.

214. Reserve Right to Amend.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief individually, jointly and severally as against all Defendants:

a) Award compensatory and general damages in an amount of 10 million dollars but not limited to any emotional distress, and any other compensatory damages as permitted by law and according to proof at trial;

b) Award punitive or exemplary damages where alleged against Defendants, in an amount of no less than 10 million dollars and/or an amount greater than to be determined at trial;

c) Award court fees and attorneys' fees  pursuant to 42 U.S.C. §1988;

d) Award costs of suit incurred herein pursuant to 42 U.S.C. §1920 and 1988; and,

e) Award such other and further relief as the Court deems just and proper.

Dated: $1-20-2023$

STATE OF WISCONSIN

*P.O. Box 81842*
*Racine WI 53408*

Terrence Fitch

Plaintiff *Propria Personam*

## **VERIFICATION**

(STATE of ___Wisconsin___ )

(COUNTY of ___Milwaukee___ ) ss.

I, ___Terrence Fitch___ (PRINT)  being duly sworn, deposed and says that I am named as the ACCUSED in the above-entitled proceeding and that the foregoing information is true to his own knowledge, except as to matters herein stated to be alleged on information and belief and as to those matters he believes it to be true.

___(Signature)___

(Signature), ACCUSED, In Propria Persona.
All Rights Reserved pursuant to UCC-1-308.

The foregoing instrument was acknowledged before me

This ___20___ day of ___JANUARY___ , 2023

By ___TERRENCE FITCH___

Sworn to before me this ___20___ day of ___Jan.___ , ___2023___ .

___(Signature)___
Notary Public   Exp 5/7/24

DAVID W KOSMEN
Notary Public
State of Wisconsin